### Lipsky v. Barry
*[Cite as 8 AOA 530]*

*Case No. 90AP-07*
*Franklin County, (10th)*
*Decided December 11, 1990*

Lane H. Cohen, Kondritzer, Gold & Frank Co., L.P.A., for Relator.

Anthony J. Celebrezze, Jr., Attorney General, and Scott A. Armour, for Respondents.

REILLY, P.J.

Relator has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to vacate its order setting relator's average weekly wage at $111.65, and to recalculate such wage in accordance with the evidence contained in the Industrial Commission claim file.

This cause was referred to a referee pursuant to Civ. R. 53 and Loc. R. 11 of the Tenth District Court of Appeals. The referee issued a report recommending that this court deny the writ of mandamus. For the following reasons, we modify the referee's report and grant the requested writ of mandamus.

While tending bar at Lee's Cafe in Middletown, Ohio, relator suffered a heart attack as a result of a stress-provoking racial incident. Relator's claim was subsequently allowed and temporary total disability compensation was awarded by a district hearing officer. There was no further appeal from this order. The matter was referred to a bureau claims examiner, who placed relator's average weekly wage at $100. The worksheet contained in the claim file indicates that this amount was obtained by dividing claimant's yearly income as reported on his 1986 W-2 form, $5,200, by fifty-two weeks.

Relator filed a motion seeking a recalculation of his average weekly wage. The evidence stipulated by the parties contains three documents relevant to this inquiry. Relator submitted a document captioned "1986 income data," which contains two items which could be considered wages.[1] The $5,200 reported as wages paid by Lee's Cafe was the basis of the previously discussed order entered by the claims examiner. Relator also maintained that he earned $14,560 working two days a week at a second bar, Bill's Open Door.

The stipulated evidence also includes a test audit report performed by the bureau's underwriting/auditing section. The auditor found that Lee's Cafe was operated as a partnership by relator and Michel Wieser. Although relator's wages were reported as

employment income on the W-2 form, the auditor noted that the amount actually represented periodic draws against the anticipated profits of the partnership.

The report further establishes that relator and Wieser were the owners and officers of a close corporation which operated Bill's Open Door. Relator served as treasurer for the corporation, but he was not paid a salary. Relator reported ordinary income of $15,039 for the 1986 tax year, representing approximately one-half of the corporation's net profit.

Finally, the evidence includes an inter-office communication addressed to the claims examiner. This report concludes that, without explanation, the income relator received from Bill's Open Door represented a return on investment rather than wages upon 'which workers' compensation benefits can be paid.

Relator's motion was heard by a district hearing officer who issued an order placing relator's average weekly wage at $111.65. Apparently, the district hearing officer erroneously included relator's state tax withholding as wages in calculating this amount, which was otherwise based on his wages at Lee's Cafe. The order contains no reference to the wages relator allegedly earned at Bill's Open Door, nor any explanation for their exclusion.

This order was appealed and affirmed without further explanation by both the regional board of review and the Industrial Commission staff hearing officers.

The objections to the referee's report raise two issues of law:

"whether wages received in employment concurrent with but separate from the employment in which the injury occurred are included when calculating the average weekly wage under R.C. 4123.61, and whether income representing the net profit of a close corporation may be considered wages for purposes of calculating the average weekly wage."

R.C. 4123.61 provides, in pertinent part, as follows:

"The average weekly wage of an injured employee at the time of the injury *** shall be taken as the basis upon which to compute benefits.

"In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury ***.

"Compensation for all further temporary total disability shall be based as provided for permanent disability claims.

"In death claims, permanent total disability claims, permanent partial disability claims, and claims for impairment of earnings, the claimant's or decedent's average weekly wage for the year preceding the injury *** shall be the average weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, *** any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

"In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants."

The statute does not provide specific guidance regarding the question of concurrent employment. This issue, however, was previously addressed by the Supreme Court in State, ex rel. Smith, v. Indus. Comm. (1933), 127 Ohio St. 217. In Smith, the claimant was employed both as a baker and a volunteer fireman. He was injured in his capacity as a volunteer fireman, but sought to have the wages he received as a baker included in the average weekly wage calculation. The court found that, under GC §1965-84, the predecessor to R.C. 4123.61, the term "average weekly wage" was not intended to include earnings received by the claimant in an occupation separate and distinct from the one in which he was injured. Id. at 222.

The court considered the approach of courts in other jurisdictions which had held that a claimant could aggregate earnings from concurrent employers if the claimant was engaged in similar work for those employers. Nevertheless, the court noted that "*** there is a clear distinction between the instant cases and those which hold that an employe[e] should be compensated on the basis of combined earnings from all similar employments. ***" Id. at 221.

A majority of jurisdictions continue to apply the similar employment rule, although

a substantial minority permit aggregation of concurrently earned wages in all cases. 2 Larson, *Workman's Compensation Laws* (1987), §60:31(a). Apparently, only three states refuse to permit claimants to combine such wages under any circumstances. *Id.*

We also note that R.C. 4123.61 (formerly GC §1465-84) was amended only four years after the *Smith* decision was released. At that time, the Legislature inserted the final paragraph in the current statute which directs the commission to calculate the average weekly wage by any means which will enable it to do substantial justice to the claimant when special circumstances exist. At least one commentator is of the opinion that the amendment was intended to correct the harsh impact of the *Smith* case. Young, *Workmen's Compensation Law of Ohio* (1971) 127, §74.4.

More recent case law also emphasizes that the average weekly wage must do substantial justice to the claimant, while avoiding a windfall. *State, ex rel. Wireman, v. Indus. Comm.* (1990), 49 Ohio St. 3d 286. We conclude that R.C. 4123.61 requires the commission when calculating the average weekly wage to consider all wages earned in concurrent employments, at least if they are similar to the employment in which the claimant is injured. This conclusion follows both from the language of R.C. 4123.61 and the *Smith* case, which recognized the similar employment doctrine. R.C. 4123.61 directs the commission to do substantial justice when calculating the average weekly wage considering special circumstances. Special or unusual circumstances have been found where the claimant works a part-time rather than a fulltime work week. *Wireman, supra,* at 289.

In this case, relator is apparently employed part-time by both Lee's Cafe and Bill's Open Door. This is a special or unusual circumstance which the commission is directed to consider under R.C. 4123.61. This is also consistent with the holding in *Wireman* that the average weekly wage calculation must do substantial justice while avoiding a windfall. A windfall will not result concerning similar employment as the claimant will most probably be disabled from both jobs. In any case, if the claimant is capable of performing a job similar to that in which he was injured, this fact would support the termination of temporary total benefits altogether. Aggregating concurrent employments creates no more windfall for the claimant, nor burden on the employer, than using an average of the past years wages as is directed by R.C. 4123.61.

Moreover, the Supreme Court recognized but distinguished the similar employments doctrine in *Smith, supra.* Given this fact and the subsequent amendment of R.C. 4123.61, the statute at least requires the commission to consider wages earned in employment similar to that in which the claimant was injured. As there is no indication that the commission considered the evidence of relator's employment at Bill's Open Door, an abuse of discretion results and further consideration is warranted.

As to the second issue, the commission maintains that no abuse of discretion occurred since relator's alleged income from Bill's Open Door is in the nature of a return on investment rather than wages for which compensation can be paid. Temporary total disability benefits are designed to compensate for loss of earnings. *State, ex rel. Ramirez, v. Indus. Comm.* (1982), 69 Ohio St. 2d 630, 634. R.C. 4123.61 provides that benefits will be calculated based on the claimant's average weekly wage for the past year, excluding periods of involuntary unemployment. Although not further defined in R.C. Chapter 4123, the term "wages" generally means compensation paid in return for labor or work. The commission correctly asserts that a return on investment is not a wage as it represents earnings derived from capital rather than labor. Profits derived from a small business, however, do not necessarily represent a return on investment.

Self-employment earnings are considered wages within the meaning of R.C. 4123.61. *Young, supra;* cf., *Smith v. Indus. Comm.* (1986), 25 Ohio St. 3d 25 (including a period of self-employment resulting in a net loss of income in the year from which the average weekly wage is calculated is a lopsided and inequitable result where no income is added to claimant's yearly earnings). The income relator received from the close corporation is not different from the draws relator took on partnership profits, but they were treated differently by the commission. The income received from the partnership and the corporation could represent earnings from labor, a return on investment, or a mixture of the two. This is a factual question within the

discretion of the commission, but there is no indication that it was addressed. The order includes the partnership earnings, but excludes the corporate earnings without explanation.

As there is no indication in the record that the commission considered the income relator received from Bill's Open Door, a writ of mandamus will issue, ordering the commission to further consider whether this income should be included in relator's average weekly wage under the special circumstances of this case, and whether this income constitutes wages for which compensation can be paid.

*Writ granted.*

YOUNG and BRYANT, J.J., concur.

---

[1] Relator also included a number of other items including tax withholding and health care premiums. We agree with the referee that these items were not properly included as wages and relator does not object to this conclusion.